IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Antwion Lashae Gillespie, *pro se*, | Case No. 1:09 CV 285 |
| Petitioner, | (1:07 CR 96-1) |
| -vs- | MEMORANDUM OPINION AND ORDER |
| United States of America, | JUDGE JACK ZOUHARY |
| Respondent. | |

Defendant Antwion Gillespie, a prisoner in federal custody, filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc Nos. 1 & 3). The Government filed a Response (Doc. No. 8). Defendant also filed Motions Seeking Production of Documents, requesting his previous counsel turn over several files related to his § 2255 Motion (Doc. Nos. 7 & 12); a Motion Seeking Enlargement of Time to File a Traverse Brief (Doc. No. 10); and a Motion for the Court to hold its decision in abeyance (Doc. No. 11).

### BACKGROUND

On March 22, 2007, Defendant was a passenger in a van driven by Sam Juwan Shannon on Interstate 94 in Michigan. State troopers stopped the van because it had a cracked windshield and the van failed to signal a lane change. During the traffic stop, troopers discovered an outstanding warrant for Defendant's arrest. Furthermore, a search of the vehicle uncovered two bricks of cocaine hidden behind the van's back-door panel, along with a loaded semiautomatic handgun in the pocket of Shannon's jacket, which was in between the driver and front passenger seats. Defendant admitted to purchasing and transporting the cocaine, and he also admitted to participating in several other cocaine transactions.

In April 2007, Defendant was indicted for possession of 500 grams or more of cocaine (Crim. Doc. No. 1). Defendant retained attorney Charles Desotelle who filed a motion to suppress the evidence seized during the traffic stop (Crim. Doc. No. 28). In August 2007, the motion to suppress was denied (Crim. Doc. No. 50).

In September 2007, Defendant entered a guilty plea without a written plea agreement. As part of the oral agreement, the Government agreed not to file a notice of prior drug conviction (pursuant to 21 U.S.C. § 851(a)) and, further agreed to evaluate Defendant's cooperation with law enforcement for a sentence reduction (pursuant to Sentencing Guideline § 5K1.1). On direct questioning by this Court at the plea hearing, Defendant acknowledged that he understood the plea agreement, and had not been pressured or coerced into making his plea (Plea TR 22-23).

In December 2007, the Government filed a motion recommending a three-level reduction in Defendant's Offense Level, based on his substantial assistance with law enforcement (Crim. Doc. No. 69). Defendant was scheduled to be sentenced in December 2007. However, at the hearing, Defendant requested more time to review the Pre-Sentence Investigation Report (PSR). The Court granted a continuance, and also appointed David Kaczor as substitute counsel for Defendant in January 2008. Thereafter, Kaczor filed a Sentencing Memorandum on Defendant's behalf, requesting a four-level reduction in Defendant's Offense Level, based on Defendant's cooperation with law enforcement (Crim. Doc. No. 83).

In March 2008, this Court sentenced Defendant to 105 months imprisonment (Crim. Doc. No. 90). This Court calculated Defendant's base-level offense as 32, and also applied a two-level enhancement for the possession of a dangerous weapon, pursuant to Guideline § 2D1.1(b)(1), for a total offense level of 34 (Sentencing TR 3-4); then applied a four-level reduction, under § 5K1.1, and a further three-level reduction for acceptance of responsibility, under § 3E1.1, for a final total offense

level of 27. Applying the Criminal History Category III, the appropriate Guidelines range was 87 to 108 months, and this Court sentenced Defendant to 105 months imprisonment.

After the sentencing hearing, Kaczor met with Defendant to discuss his appellate rights, and Defendant did not inform Kaczor he wished to appeal (Doc. No. 8, Kaczor Aff. ¶ 7). On March 24, 2008, Kaczor also wrote Defendant a letter containing the following:

> Based upon our numerous discussions, it is my understanding you do not wish to appeal. Therefore, no notice of appeal has been filed on your behalf. If, however, you change your mind, you have ten days from the entry of the Judgment within which to appeal. Therefore, you must let me know on or before April 7, 2008, if I am to file an appeal.

(Kaczor Aff., Ex. A). Defendant never responded to Kaczor's letter (Kaczor Aff. ¶ 7(K)). In March 2009, one year after sentencing, Defendant filed the instant Motion to Vacate, Set Aside, or Correct his sentence.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, to obtain relief a defendant must show that "the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Frady*, 456 U.S. 152, 167-168 (1981).

A defendant alleging constitutional error must prove the existence of an error of constitutional magnitude that had "a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Furthermore, "[i]t is a 'well-settled principle that to obtain collateral

review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *Frady*, 456 U.S. at 166). "A petitioner seeking to vacate a sentence pursuant to § 2255 has the burden of sustaining his contentions by a preponderance of the evidence." *McNeil v. United States*, 72 F. Supp. 2d 801, 804 (N.D. Ohio 2004).

A defendant alleging non-constitutional error must establish the error "qualifies as 'a fundamental defect, which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Reed v. Farley*, 512 U.S. 339, 348 (1994) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). This stringent standard recognizes that a § 2255 motion is not meant to take the place of a direct appeal. *See Sunal v. Large*, 332 U.S. 174, 178 (1947). Thus, non-constitutional claims not raised at trial or on direct appeal are waived for collateral review, except where the errors result in something akin to a denial of due process. *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

Defendant's various claims fall into two general categories: (1) sentencing errors, and (2) ineffective assistance of counsel. Defendant argues this Court erred at sentencing by: (1) imposing a two-level enhancement for possession of a dangerous weapon; and (2) treating the Guidelines as mandatory, instead of advisory. Further, Defendant argues his original counsel, Desotelle, was ineffective for: (1) pressuring him into believing a guilty plea was his only option; (2) allowing him to enter into a plea without any written agreement; and (3) keeping Defendant "in the dark" about various phases of his trial. Defendant also argues his substitute counsel, Kaczor, was ineffective for: (1) failing to discuss Defendant's PSR; and (2) failing to object to factual inaccuracies in the PSR.

## SENTENCING ERRORS

Defendant failed to file a direct appeal, and therefore, has procedurally defaulted on his sentencing claims. In the case where a defendant has failed to assert non-constitutional claims on direct appeal, and therefore procedurally defaulted on those claims, to then raise those claims in a § 2255 motion, a defendant must show "either that (1) he had good cause for his failure to raise such arguments and he would suffer actual prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). In order to satisfy the first option, "cause" and "actual prejudice," a defendant must show "some objective factor external to the defense" prevented raising the issue earlier, and the resulting error "worked to his actual and substantial disadvantage, infecting his entire trial with error." *Frady*, 456 U.S. at 170.

Defendant fails to satisfy the first test under *Regalado* ("cause" and "actual prejudice") because Defendant offers no good cause for failing to raise his sentencing claims on direct appeal. Defendant was advised by this Court at the sentencing hearing of the ten-day deadline for filing a notice of appeal (Sentencing TR 25). Defendant's counsel, Kaczor, discussed Defendant's appellate rights with him immediately after the sentencing hearing (Kaczor Aff. ¶ 7). At no time during that meeting did Defendant request an appeal be filed. *Id.* Kaczor also wrote to Defendant, explaining the ten-day time-line for filing an appeal, and acknowledged his willingness to file an appeal if Defendant so wished (Kaczor Aff., Ex. A). Defendant never responded. A § 2255 motion "is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado,* 334 F.3d at 528 (citing *Frady*, 456 U.S. at 167-68). Defendant was given ample opportunity to file an appeal, and offers no evidence of good cause for failing to raise his sentencing errors on appeal.

5

Defendant's sentencing claims also lack substantive merit. This Court applied the two-level enhancement for possession of a dangerous weapon based on the handgun found in between the seats where Defendant was a passenger. Defendant argues it was "plain error" for this Court to apply this enhancement because it was "clearly improbable" the weapon was connected with the offense (Doc. Nos.1 & 3).[1] However, "district judges can find the facts necessary to calculate the appropriate Guidelines range using the . . . preponderance-of-the-evidence standard." *United States v. Roberge*, 565 F.3d 1005, 1012 (6th Cir. 2009). Here, this Court found by a preponderance of the evidence that Defendant was in possession of the handgun found in the van. Further, "non-constitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequence of waiver." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

Defendant, citing *Blakely v. Washington*, 542 U.S. 296 (2004), also argues his sentence violated the Sixth Amendment because the two-level enhancement for possession of a dangerous weapon was not determined by a jury or admitted to in his plea. Any fact "other than the fact of a prior conviction . . . that increases the penalty for crime beyond the prescribed statutory *maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Roberge*, 565 F.3d at 1012 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)) (emphasis added). In *Roberge*, the court noted that certain facts relating to sentencing enhancements "affected the judge's calculation of the base offense level and sentence enhancements," but the enhancements "did not result in a combined sentence greater than the statutory *maximum*." *Id.* (emphasis added). Here, Defendant plead guilty to possession of 500 or more grams of cocaine, a crime which carries a maximum penalty of 480

---

[1] This Court notes the two-level gun enhancement was a part of the PSR, and at sentencing this Court outlined the calculations used to arrive at an Offense Level of 27, including the two-level enhancement for possession of a dangerous weapon. At no time did Defendant object to this Court's calculation or the inclusion of the two-level gun enhancement (Doc. No. 85).

months imprisonment. Even though the possession of a dangerous weapon enhancement affected this Court's sentencing calculation, Defendant's sentence of 105 months is clearly below the statutory maximum. Because this Court found by a preponderance of the evidence that Defendant was in possession of a dangerous weapon, and the actual sentence imposed was below the statutory maximum, Defendant's sentence does not violate the Sixth Amendment.

Defendant also alleges this Court treated the Guidelines as mandatory, instead of advisory. As this Court noted in its Sentencing Memorandum,

> [T]he Guidelines are "advisory" and no longer mandatory, and the range of choices is "significantly broadened" . . . the Guidelines are but one of several factors to be considered -- not a legal presumption -- and the Sixth Circuit has reaffirmed that the Guidelines are "truly advisory" and one of several guideposts for an "appropriate sentence."

(Crim. Doc. No. 90) (internal citations omitted). Any claim this Court treated the Guidelines as mandatory is completely without merit.

### INEFFECTIVE ASSISTANCE OF COUNSEL

For a claim of ineffective assistance of counsel, a defendant must ordinarily prove two components: (1) counsel's performance was deficient; and (2) resulting prejudice, such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. 362, 391 (2000).

To satisfy the first prong, a defendant must point to specific errors, and the reviewing court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. "[J]udicial scrutiny of a counsel's performance must be highly deferential and [] every effort must be made to eliminate the

7

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (internal citations omitted). To satisfy the second prong, a defendant must demonstrate prejudice, establishing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

**Allegations of Ineffective Assistance by Desotelle**

Defendant's allegations of ineffective assistance of counsel in relation to his plea agreement are without merit. Defendant argues his original counsel, Desotelle, was ineffective for: (1) pressuring him into believing a guilty plea was his only option; (2) allowing him to enter into a plea without any written agreement; and (3) keeping him "in the dark." Defendant alleges his counsel was ineffective in advising him to enter a guilty plea because "there was a reasonable probability that [Defendant] did not possess a controlled substance, never having contact with the drugs and not being involved with the transport," and "[Defendant] did not derive a benefit from entering the plea" (Doc. No. 3, p. 7). The framework established in *Strickland* also applies to claims of ineffective assistance of counsel arising from a guilty plea. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). However, the second requirement of "prejudice" requires Defendant show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Defendant has not established there is a reasonable probability he would have proceeded to trial. While in custody, Defendant admitted to purchasing, concealing, and transporting the cocaine found in the van. Defendant also admitted to several previous drug transactions and led law enforcement to his supplier, a major cocaine distributor.[2] Defendant even admits making it

---

[2] Defendant argues his discussions of previous drug transactions with law enforcement were all a lie "for the sole purpose of letting them believe [Defendant] was 'big time' with serious drug connections."

8

"abundantly clear to law enforcement officials, federal and state, that he would be very interested in cooperating with any law enforcement agency in exchange for possible assistance from those agencies in anticipation of receiving leniency from federal prosecutors in future criminal proceedings" (Doc. No. 3, p. 11). After this Court denied Defendant's motion to suppress the cocaine found in the van, Defendant was basically left with no credible defense, and pleading guilty was an attractive option given the potential lengthy sentence he faced if convicted.

Defendant's plea proved quite beneficial. The Government agreed not to file a notice of a prior felony drug conviction in exchange for Defendant's guilty plea. Under 21 U.S.C. § 841(b), Defendant's prior conviction would have increased his mandatory minimum sentence from 5 to 10 years. Defendant's plea effectively cut his minimum sentence in half. The Government also filed a motion recommending a three-level reduction in Defendant's sentence for substantial assistance, which this Court adopted when it granted Defendant a four-level reduction pursuant to § 5K1.1. Defendant's plea also led this Court to grant a three-level reduction for acceptance of responsibility. In short, Defendant did benefit from his counsel's advice to plead guilty.

Defendant has also failed to demonstrate any prejudice resulting from entering an oral plea agreement, as opposed to a written plea agreement. The Government followed through on all its promises under the oral agreement, which was made on the record in open court, and Defendant has not alleged any prejudice, absent conclusory allegations that it was not in his "best interest . . . to plea[d] guilty without the benefit of a plea agreement" (Doc. No. 3, p. 8).

**Allegations of Ineffective Assistance by Kaczor**

Defendant argues Kaczor, his substitute counsel, was ineffective for: (1) failing to discuss the PSR with Defendant; (2) failing to object to "factual inaccuracies" in the PSR, specifically the

---

However, Defendant's information led to an actual drug-bust thereby refuting such argument (Doc. No. 3, p. 12).

9

"attributable drug weight that would determine [Defendant's] base offense level"; and (3) failing to file an appeal (Doc. No. 3, pp. 10, 17).

Defendant's argument that Kaczor failed to discuss the PSR is without merit. At sentencing Defendant was asked directly by this Court if he was given adequate time to review the PSR:

| | |
|---|---|
| The Court: | [] Have you had sufficient time now to review the presentence report with your counsel? |
| The Defendant: | Yes, sir |
| The Court: | Very good. Do we have any unresolved objections to the presentence report from either side? |
| Mr. Kaczor: | No, Your Honor. |

(Sentencing TR 3). Defendant clearly understood the purpose of the Court's questioning, considering the Court had already postponed sentencing once for the express purpose of allowing Defendant more time to review his PSR. Kaczor also met with Defendant numerous times to discuss the PSR (Kaczor Aff. ¶ 7). Defendant's allegation that Kaczor did not meet to discuss the PSR is contrary to the record before this Court.

Defendant's arguments regarding Kaczor's failure to object to the factual inaccuracies in the PSR are also without merit. Defendant directs the Court to Paragraph 30 of the PSR, which states "a total of at least 11.5 kilograms of cocaine and a firearm are being attributed to Mr. Gillespie for his involvement in the instant offense." Defendant cannot now challenge the content of the PSR, after the Court has already given him more than enough time to raise objections. Further, the total of 11.5 kilograms was calculated from the two bricks of cocaine found during the stop of Shannon's van, as well as the amounts Defendant readily admitted to the state troopers while he was in custody.

Kaczor was also not ineffective for failing to file a direct appeal. In examining counsel's performance regarding filing an appeal, a court must first decide whether counsel "'consulted' with the defendant about the benefits and drawbacks of bringing an appeal." *Regaldo,* 334 F.3d at 525 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000)). If counsel has consulted with the client,

then "counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Regaldo*, 334 F.3d at 525 (citations omitted). However, if counsel has failed to consult with the client "then the court must address whether the failure to consult, by itself, is indicative of deficient performance." *Id.* Here, Kaczor did not perform in an unreasonable manner because, when meeting with Defendant to discuss his appellate rights, Defendant never instructed Kaczor to file an appeal (Kaczor Aff. ¶ 7). Kaczor also sent Defendant a letter, instructing Defendant to inform him if he wished to file an appeal. Defendant never responded. Defendant's claim now, a full year after receiving Kaczor's letter, that he did request an appeal be filed, is unpersuasive and fails to override the strong presumption that counsel performed effectively. *See Strickland*, 466 U.S at 690 ("[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). Because Defendant never expressly instructed Kaczor to file an appeal, Defendant's claim of ineffective assistance of counsel is without merit.

### MOTION SEEKING ENLARGEMENT OF TIME TO FILE A TRAVERSE BRIEF

Defendant filed a Motion Seeking Enlargement of Time to File a Traverse Brief, seeking 45 days to file a reply that Defendant argues "will provide [Defendant] the opportunity to file a well-researched brief containing the full spectrum of issues worth of this Court's review" (Doc. No. 10, p. 1). Defendant argues his lack of "formal training in the field of criminal law," and limited access to the prison law library, justify a 45-day extension to file his reply (*id.*, p. 2). Leave to file a reply is within the discretion of this Court. After analyzing Defendant's arguments above, this Court believes Defendant has not presented a colorable claim of sentencing error or ineffective assistance of counsel. Any further briefing by Defendant would be fruitless. Therefore Defendant's Motion Seeking Enlargement of Time is denied.

## PRODUCTION OF DOCUMENTS

In June 2009, Defendant filed a Motion Seeking Production of Documents, and in August 2009 filed a carbon-copy motion. For the following reasons, both motions are denied

Defendant requests his "'Discovery Package,' Indictment, Presentence Investigation Report, Sentencing Hearing Transcripts and any other relevant documents" (Doc. No. 7, p. 1). Defendant requests these documents be turned over by "previous defense counsel." It is unclear if Defendant is referring to Desotelle, Kaczor, or both. Because Kaczor replaced Desotelle as Defendant's counsel in January 2008, and presumably Desotelle turned over all of Defendant's files at that time, this Court presumes Defendant is referring to Kaczor. Kaczor has acknowledged receiving a request for documents from Defendant, and indicated he turned over any documents in his possession requested by Defendant (Kaczor Aff. ¶ 7(L)).

Defendant has cited extensively to the transcripts and the PSR in his brief, and it is difficult to see how Defendant would be able to cite so thoroughly to these documents without already having them in front of him. Further, in light of this Court's denial of Defendant's Motion Seeking Enlargement of Time, Defendant's argument that "these documents and other related materials are necessary to Supplement/Amend the pending 28 U.S.C. § 2255 [Motion]" (Doc. No. 7, p.1), is moot.

## MOTION REQUESTING DEFENDANT'S § 2255 MOTION BE HELD IN ABEYANCE

On August 5, 2009, Defendant also filed a Motion requesting this Court hold his § 2255 Motion in abeyance, pending his receipt of the above-mentioned documents, specifically his "Indictment, Discovery, Rule 11 Plea Hearing, Plea Agreement, and Sentencing Hearing Transcripts" (Doc. No. 11). Defendant directs this Court to 28 U.S.C § 753(f), which states:

> Fees for transcripts furnished in proceedings brought under section 2255 of this title [28 USCS § 2255] to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit or appeals is *not frivolous* and that the *transcript is needed to decide the issue* presented by the suit or appeal. (emphasis added)

12

Defendant's request is frivolous. Defendant is now requesting a copy of his "plea agreement," while one of his claims for ineffective assistance of counsel is that Desotelle allowed him to enter into an oral plea agreement, instead of a written one. Further, this Court has before it all the relevant documents needed to rule on Defendant's § 2255 Motion, and holding Defendant's Motion in abeyance pending his receipt of the requested documents will unnecessarily draw-out these proceedings. Therefore, Defendant's Motion to hold his § 2255 Motion in abeyance is denied.

## Conclusion

Defendant has failed to establish that this Court erred in sentencing Defendant to 105 months in prison. Further, Defendant has failed to establish that either Desotelle or Kaczor were constitutionally ineffective. Therefore, the Motion to Vacate, Set Aside or Correct under 28 U.S.C. § 2255 is denied (Doc. Nos. 1 & 3), and Defendant's Motions for Production of Documents (Doc. Nos. 7 & 12) and Motion for Extension of Time to File Traverse Brief (Doc. No. 10) are denied. The Motion for the Court to hold its decision in abeyance (Doc. No. 11) is also denied.

Furthermore, pursuant to 28 U.S.C. §§ 1915(a) and 2253(c), this Court certifies that an appeal of this action could not be taken in good faith and that Defendant has failed to make a substantial showing of the denial of a constitutional right. Therefore, this Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

               s/ *Jack Zouhary*
               JACK ZOUHARY
               U. S. DISTRICT JUDGE

August 12, 2009